UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**DANTE CORVETTE STONE**                                                                    **PLAINTIFF**

v.                                                          **CIVIL ACTION NO. 3:22-CV-P643-JHM**

**JOHN D. MINTON JR.** *et al.*                                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 civil-rights action brought by a convicted prisoner. The Court has granted Plaintiff Dante Corvette Stone leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss this action.

**I.**

On the same date Plaintiff filed the complaint in this action (DN 1), Plaintiff also filed a motion for leave to file an amended complaint (DN 2), a motion to "conjoin filings" (DN 5), and a motion for a preliminary injunction/temporary restraining order (DN 6). Because they were filed on the same date, the Court will consider the allegations set forth in all four documents in conducting its preliminary review of this action.

In the complaint, Plaintiff names the following as Defendants – Kentucky Supreme Court Chief Justice John D. Minton, Jr.[1]; "(Unknown Ky. Sup. Ct. Justices)"; Erin Hoffman-Yang, Assistant Public Advocate-Attorney, Kentucky Department of Public Advocacy (DPA); Samuel Potter; Appeals Supervisor, DPA; and Kathleen Schmidt, Appeals Branch Manager, DPA. Plaintiff indicates that he is suing these Defendants in both their official and personal capacities.

---

[1] Although Judge John D. Minton, Jr. is no longer the Chief Justice of the Kentucky Supreme Court, he was at the time Plaintiff filed this action.

Plaintiff alleges that Defendants "committed actions of insurrective criminal malfeasance in domestic terrorism AGAINST THE CONSTITUTIONS OF THE UNITED STATES OF AMERICA and the COMMONWEALTH OF KENTUCKY, AND AGAINST THE PLAINTIFF . . . ."

Plaintiff specifically alleges that the judicial Defendants allowed:

the rejection of two (2) pro se motions [Plaintiff] had attempted to file asking the [DPA] appellate attorney appointed in his farcical-imitation of a quasi-pseudo direct appeal . . . be removed due to irreconcilable differences and a complete determination to lose and forfeit the matter and a pro bono appellate attorney be assigned due to the motions nor baring the DPA atty.'s signature.

. . . .

The "Ky. Sup. Ct." twice (2x) entered its own MANDATORY MOTION BY INVOKING THE BINDING TERM OF "SHALL' UPON THEMSELVES AND THE DPA ATTORNEY in stating they "shall" file the motion on [Plaintiff]'s behalf yet never enforcing its own binding motions.

Allowing the rejecting of [Plaintiff]'s pro se Motion to Enforce Court Order, twice (2x) which presented to the "Ky. Sup. Ct." a request to enforce its own binding motions mandating the DPA atty. motion for a pro bono atty to be assigned to the matter.

Allowing the DPA attorney to file (2) (uncharged) feloniously fraudulent and completely renegade filings in the matter, both devised to lose and forfeit the matter utilizing ridiculously ludicrous mis-arguments, mis-statements and falsified facts and theories: all knowingly and intentionally, to substantiate its unspeakably deplorable ruling.

Allowing the rejection of [Plaintiff]'s Motion of Request to Submit a Belated . . . or . . . Reinstated [Direct Appeal] after the "Ky. Sup. Ct." and DPA atty. colluded to effectively utilize criminal malfeasance to derail and void the judicial supervisory process and usurp legitimate direct appeal and post-conviction judicial processes in lieu of committing and furthering actions constituting domestic terrorism.

These violations were committed to: (A) Discriminate against and thwart [Plaintiff]'s refusals to accept the "pay to play or beg mercy for railroading" mob-style criminal justice, and again, stand pro se as he's done successfully in the trial and appellate litigations; and (B) to conceal via cancellation of [Plaintiff]'s trial

arguments, that the judicial systems of Kentucky are being misused to affect organized crime and domestic terrorism within the Commonwealth and beyond.

Plaintiff further states:

Before, during, and after the instruments used in the matter to commit and further insurrective criminal malfeasance in domestic terrorism were utilized by [Defendant Hoffman-Yang], (formerly the "DPA atty."), [Plaintiff] repeatedly beseeched [her] supervisors [Defendants] [] Potter and [] Schmidt asking that; (A) she be replaced, (B) that the entire DPA recuse from that matter, and (C) that the DPA or [Defendant Hoffman-Yang], responsibility for her admitted sabotaging of [Plaintiff]'s interests in the matter, to which they both refused.

[Defendant Hoffman-Yang] committed and acted in complicity to violations of the aforementioned nature when after being presented with a full assessment of the case's appeal factors including record citing references, arguments, case law precedents, statutory errors, and constitutional errors (most of which would've resulted in a reversal and remand with prejudice), but deferring to misapplied, ineffective arguments to bolster knowing and intentional fraudulent theories . . . .

The multi-felonious actions of insurrective criminal malfeasance in domestic terrorism were repeated in a detail, numerous times, to both Defendants Potter and Schmidt. Neither acted to report these actions in the "Ky. Sup. Ct.," the Kentucky Bar Association, and higher ranking DPA supervisors/administrators, nor any state or federal police or prosecuting agencies, which makes them both equally liable as co-complicitors.

The Defendants named and unnamed within this filing and after related, to be adjoined, filings all colluded in insurrective malfeasance to commit domestic terrorism. . . . NO LEGITIMATE GOVERMENTAL FUNCTION HAS EVER OCCURRED IN RELATION TO THE ISSUES DISCUSSED IN THIS, AND RELATED, FILINGS. WE'RE SIMPLY [] ADJUDICATING UNCHARGED ACTIONS CONSTITUTING DOMESTIC TERRORISM COMMITTED UNDER COLOR OF LAW. . . .

As a citizen of the United States of America and the Commonwealth of Kentucky, . . . PLAINTIFF for the past eight and one-half (8½) years has been targeted with and subjected to a campaigning of actions constituting INSURRECTIVE CRIMINAL MALFEASANCE TO EFFECT DOMESTIC TERRORISM, at the culpabilities of the 'GOOD OLD BOYS DOMESTIC TERRORISTS ORGANIZATION' (hereinafter G.O.B.D.T.O) – a collective organization of individuals who misuse public servantry positions to continually attack the applications and effectuations of all parameters of the Constitutions of the United States of America and the Commonwealth of Kentucky in a "Dred Scott" type of matter, constantly violating criminal laws against the citizenry in-mass also force conditioning of the Commonwealth of Kentucky's incarcerated persons

> populations to re-offend both while in facilities and upon release against the societal and world communities for the spoils of cultural supremacy and economic and social exploitations of the rest of society, especially those of ethnic minorities, financially destitute, and physical or intellectual disabilities, more particularly males of these demographics AS SHOWN BY G.O.B.D.T.O INSURRECTIVE CRIMINAL MALFEASANCE ACTIONS COMITTED AGAINST [PLAINTIFF].
>
> THE G.O.B.D.T. is effectively violating, kidnapping, attempted murder, complicity to murder, intimidating witnesses in the legal process, perjury, official misconduct (AEDPA), liability for conduct of another; complicity, R.I.C.O., tampering with physical evidence, human trafficking, judicial disqualifications, witness retaliation, embezzlement, assault, sexual assault, and more in violations of 18 U.S.C. § 242 Deprivation of Rights Under Color of Law . . . .

(*Id*. at pp. 3-8)

> As relief, Plaintiff seeks damages and:
>
> the granting of a preliminary injunction order and temporary restraining order, removing [Plaintiff] from the purview of the G.O.B.D.T.O controlled Ky. Dept. of Corr. and placing [Plaintiff] in a private psychological care facility . . . .
>
> The granting of an in-person hearing to decide whether or not there's a need to issue an Order of Abeyance in this matter (and the conjoined filings) due to the astronomically unique circumstances of a horde of public servants openly and brazenly committing insurrective criminal malfeasance in domestic terrorism or, or RATHER if there's a need there of filing Federal Habeas Corpus procedures.
>
> An official recommendation filed on record from this Honorable Court to the United States Department of Justice advising the Defendants, along with the Defendants named in the conjoined action, be both civilly and criminally prosecuted.

(*Id*. at pp. 13-14).

In Plaintiff's motion for leave to amend the complaint, he seems to request leave to file an amended complaint at a future date with amendments that could include "a change in the persons listed as primary defendants, additional named and unnamed defendants, complaints of additional violating acts committed against the petitioner," and several other vague requests (DN 2). He does not attach a proposed amended complaint to this motion.

4

In Plaintiff's "motion to conjoin filings," he requests the Court to "combine" into the instant action:

> All of the above-named, as of yet named, and unnamed defendants have all colluded in actions of insurrective criminal malfeasance in domestic terrorism, by violating R.I.C.O. and A.E.D.P.A. acts under contexts of 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law . . . . These facts are shown, at least, in the eight-and-over-one half year campaign insurrective malfeasance in domestic terrorism as displayed in the matters pertaining to [Plaintiff], his family, his friends, his community, and his fellow illegally enslaved (as in violations of U.S. Const. 13th Amend. and U.S. Const. 15th Amend.) American Citizen. . . .
>
> Hereforth, all G.O.B.D.T.O participants must be adjudicated together to present for judgment both their actions as an individual action, and as an action accomplicing and in furtherance of insurrective criminal malfeasance in domestic terrorism.

(DN 5).

Finally, in his motion for a preliminary injunction and temporary restraining order, Plaintiff states:

> Comes [Plaintiff] out of an over-abundance of caution, to file with the above named Honorable Court a "motion/complaint" supporting the attached "Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order" as [Plaintiff] is unable to functionally research the matter no citings are possible.
>
> [Plaintiff] is attempting, and even creating, avenues of effectively litigation the above-styled matters, however the defendants, their agents, and their co-complicator employ every single strategic means imaginable to prevent [Plaintiff] access to the court. The accounts of the kinds of activities committed to usurp and undermind the judicial process in this matter are listed in the attached filings.

(DN 6).

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). Under § 1915A, the trial court must review the complaint and dismiss the

complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

In addition, "[a] district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

**III.**

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The complaint and the other motions filed by Plaintiff are difficult to follow. Nonetheless, the Court will attempt to address Plaintiff's claims.

**A. Judicial Defendants**

Plaintiff's official-capacity claims against the judicial Defendants fail for two reasons. First, state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from the judicial Defendants in their official capacities, he fails to state cognizable claims under § 1983. These claims also fail because claims against state officials in their official capacities are deemed claims against the Commonwealth of Kentucky and are, therefore, barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166, 169, (1985); *see also Bennett v. Thorburn*, 843 F.2d 1390 (6th Cir. 1988) (concluding that an official-capacity suit against a judge who presided over state-court litigation was barred by the Eleventh Amendment).

As to Plaintiff's individual-capacity claims against the judicial Defendants, it does not appear that Plaintiff makes any specific allegations against Defendant Minton or the "(Unknown

Ky. Sup. Ct. Justices).":  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (italics in original) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of the plaintiff's claims for failure to state a claim upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings.").  Here, Plaintiff fails to state individual-capacity claims against the judicial Defendants because he makes no allegations of specific conduct or personal involvement against them in his filings.

Moreover, even if Plaintiff had made specific allegations against the judicial Defendants, based upon the general substance of Plaintiff's filings, it appears that that these claims would also fail because judges are entitled to absolute immunity from suits for money damages for all actions taken in their judicial capacity, unless those actions are taken in the absence of any jurisdiction. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam)).  Judicial immunity is embedded in the long-established principle that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without

8

apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 20 L. Ed. 646 (1872)).

### B. DPA Defendants

Kentucky courts have consistently recognized that the DPA is a state agency for Eleventh Amendment purposes. *See, e.g.*, *Lowe v. Ky. Court of Justice*, No. 2:14-168-KKC, 2015 U.S. Dist. LEXIS 43527, at *6 (E.D. Ky. Apr. 2, 2015) ("Ky. Rev. Stat. 31.010 establishes DPA as state agency for Eleventh Amendment purposes") (citing *Westermeyer v. Ky. Dep't of Pub. Advocacy*, No. 2:10-131-DCR, 2011 U.S. Dist. LEXIS 21629, at *9 (E.D. Ky. Mar. 3, 2011)). Thus, because Defendants Hoffman-Yang, Potter, and Schmidt work for the DPA, Plaintiff's claims against them fail for the same reasons Plaintiff's official-capacity claims against the judicial Defendants fail. The Court will, therefore, dismiss these claims for failure to state a claim upon which relief may be granted and for seeking damages from Defendants immune from such relief.

As to Plaintiff's individual-capacity claims against DPA Appeals Supervisor Potter and DPA Appeals Branch Manager Schmidt, the Court will assume that they are state actors for purposes of this Memorandum Opinion and Order only. Plaintiff's allegations against them seem to be that they failed to properly supervise Defendant Hoffman-Yang. However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, there must be "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional

9

conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). Thus, because the doctrine of *respondeat superior* does not apply in § 1983 actions, the Court will dismiss Plaintiff's individual-capacity claims against Defendants Potter and Schmidt for failure to state a claim upon which relief may be granted.

As to Plaintiff's individual-capacity claim against Defendant Hoffman-Yang, it is firmly established that a defense attorney, regardless of whether she is a public defender or a private attorney, is not a state actor for purposes of § 1983. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."). Thus, Plaintiff's individual-capacity claim against Defendant Hoffman-Yang must be dismissed for failure to state a claim upon which relief may be granted.

### C. Conspiracy Claim

Even if this action were not subject to dismissal for the above reasons, the Court will address what Plaintiff's overarching claim seems to be – that Defendants conspired against him to violate his rights. Summarily, Plaintiff alleges that members of the Kentucky Supreme Court and the DPA are members of a "Good Old Boys Terrorist Organization," which Plaintiff describes as a "a collective organization of individuals who misuse public servantry positions." He asserts that this organization is involved in "kidnapping, attempted murder, complicity to murder, intimidating witnesses in the legal process, perjury, official misconduct . . . complicity, R.I.C.O., tampering with physical evidence, human trafficking, judicial disqualifications, witness retaliation,

embezzlement, assault, sexual assault, and more." The Court finds that it lacks subject matter jurisdiction over this claim under Fed. R. 12(b)(1) because the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, [and] no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

### D. Criminal Statutes

Plaintiff cites multiple criminal statutes in his filings. This Court does not have the power to direct that criminal charges be filed against anyone. *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235, 123 U.S. App. D.C. 250 (D.C. Cir. 1965). Further, Plaintiff as a private citizen may not initiate a federal criminal prosecution. *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam); *Abner v. Gen'l Motors*, 103 F. App'x 563, 566 (6th Cir. 2004). These claims must, therefore, be dismissed for failure to state a claim upon which relief may be granted.

### E. Injunctive Relief[2]

Because the Court has held that Plaintiff's underlying claims lack merit, all request for injunctive relief must be dismissed for failure to state a claim upon which relief may be granted.

### F. Motions Addressed

Upon review, because the Court finds that Plaintiff's motion for leave to amend the complaint, motion to conjoin filings, and motion for a preliminary injunction and temporary restraining order, which were summarized above and filed in conjunction with the complaint, are

---

[2] To the extent Plaintiff seeks injunctive relief regarding his conditions of confinement at EKCC, me must file a separate action raising those claims in the Eastern District of Kentucky, where EKCC is located.

11

likewise frivolous and without merit**, IT IS HEREBY ORDERED** that these motions (DNs 2, 5, & 6) are **DENIED**.

### III.

For the foregoing reasons, the instant action will be dismissed by separate Order.

Date: May 17, 2023

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants
4414.011